# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP460-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Jenny R. Armstrong, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>Jenny R. Armstrong,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST ARMSTRONG

| | |
|---|---|
| OPINION FILED: | June 24, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP460-D

STATE OF WISCONSIN                    :    IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Jenny R. Armstrong, Attorney at Law:**

**Office of Lawyer Regulation,**

             Complainant,

     **v.**

**Jenny R. Armstrong,**

             **Respondent.**

**FILED**

**JUN 24, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1   PER CURIAM.   We review a stipulation filed pursuant to Supreme Court Rule (SCR) 22.12 by the Office of Lawyer Regulation (OLR) and Attorney Jenny R. Armstrong.   In the stipulation, Attorney Armstrong does not contest that she committed nine counts of professional misconduct and that a two-year suspension of her license to practice law in Wisconsin is appropriate discipline.   The parties further stipulate that

Attorney Armstrong should pay $60,899.81 in restitution to a former client.

¶2 Attorney Armstrong was licensed to practice law in Wisconsin in 1979. She resides in Middleton. She has not previously been the subject of a disciplinary proceeding.

¶3 During the events giving rise to this matter, Attorney Armstrong was a licensed real estate broker doing business as ABA Realty, Inc. She was the only broker employed by the firm. Attorney Armstrong was licensed by the office of the Insurance Commissioner of Wisconsin to sell life, accident, and health insurance lines for several companies.

¶4 From the 1980s until October 2005, Attorney Armstrong had an attorney-client relationship with a woman we shall refer to as B.R.T. B.R.T. was born in October 1924. Briefly stated, Attorney Armstrong engaged in a lengthy pattern of misconduct, repeatedly overbilling her client, and ultimately, between 2000 and 2005, charging her client $170,651.95 for various tasks, many of which were not legal in nature.

¶5 In June 2000, Attorney Armstrong sold B.R.T. a deferred annuity policy for a single premium of $5,000. Attorney Armstrong received an immediate four and one-half percent commission on the policy in the sum of $225. At the time B.R.T. purchased the annuity policy, Attorney Armstrong was doing legal work, financial planning, and financial management for B.R.T. and billing B.R.T. for it. Attorney Armstrong did not disclose to B.R.T. in writing that Attorney Armstrong would receive a commission on the sale of the annuity policy prior to

B.R.T. entering into the transaction. Attorney Armstrong did not obtain B.R.T.'s written consent to the transaction involving Attorney Armstrong's receipt of a commission on the sale of the annuity policy prior to the transaction.

¶6 The OLR alleged and the parties have stipulated that, by selling to her legal client an annuity policy in June 2000, for which Attorney Armstrong received a commission, without obtaining a separate written consent from the client waiving the conflict of interest and indicating the client was given reasonable opportunity to consult with independent counsel, and in a transaction that was not fair or reasonable to the client, Attorney Armstrong violated former SCR 20:1.8(a) (Count One).[1]

¶7 In June 2005, B.R.T. executed a listing contract giving Attorney Armstrong's realty firm, ABA Realty, Inc., the

---

[1] SCR 20:1.8(a), as in effect prior to July 1, 2007, provides:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
>
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
>
> (3) the client consents in writing thereto.

3

exclusive right to sell B.R.T.'s duplex. Attorney Armstrong prepared and executed the listing contract, which included a "list price" of $450,000 and provided for a broker's commission of seven percent if the conditions for earning the commission were satisfied. At the time Attorney Armstrong and B.R.T. entered into the listing contract, Attorney Armstrong was performing legal and other services relative to the duplex and the sale of the duplex and billing B.R.T. for that work. Attorney Armstrong did not obtain B.R.T.'s written consent to the transaction involving Attorney Armstrong's receipt of a commission on the sale of the duplex prior to B.R.T. entering into the listing contract.

¶8 The OLR alleged and the parties have stipulated that, by contracting with B.R.T. to act as her real estate agent in the sale of her duplex for a seven percent commission, while simultaneously acting as her lawyer with respect to the sale, without obtaining a separate written consent from the client waiving the conflict of interest and indicating that the client was given reasonable opportunity to consult with independent counsel, Attorney Armstrong violated former SCR 20:1.8(a) (Count Two).

¶9 In April 2001, Attorney Armstrong prepared and filed joint income tax returns for B.R.T. and her husband for the 2000 tax year. Attorney Armstrong billed the couple $3,430.88. The couple paid in full. The income tax returns prepared by Attorney Armstrong contained errors, and Attorney Armstrong either knew or should have known of the errors, or knew or

should have known that she did not have sufficient information to complete accurate returns and that the necessary information could have been obtained from the clients or other sources.

¶10 In May 2002, the United States Internal Revenue Service (IRS) notified the couple of a deficiency and proposed changes to the 2000 tax return, which increased the taxes they owed by $2,156. The IRS demanded an additional payment of $2,717, which included interest.

¶11 In December 2002, Attorney Armstrong disputed the IRS's proposed changes to the return and asserted that the clients were entitled to a $435 tax refund. Attorney Armstrong petitioned the United States Tax Court for a hearing on behalf of the couple. She also prepared and submitted an amended Form 1040 for the 2000 tax year which, as it turned out, also included several errors.

¶12 Shortly before the scheduled trial date, the IRS completed an audit and reduced the amount of the clients' tax deficiency; the clients agreed to a stipulation offered by the IRS, under which they agreed to pay $1,136 in additional tax, plus $195 in interest, for a total additional payment of $1,331.

¶13 Attorney Armstrong then billed B.R.T. and her husband $4,118.95 for responding to the IRS notice of deficiency. The clients paid in full.

¶14 The OLR alleged and the parties have stipulated that, by preparing and filing her clients' tax returns for 2000 without accurate information that she already knew, should reasonably have known, or could have readily obtained, thereby

5

resulting in a tax deficiency and added legal expenses for her clients, Attorney Armstrong violated SCR 20:1.3 (Count Three).[2]

¶15 In addition, by charging additional fees of $4,118.95 to reduce an IRS tax deficiency determination from $2,156 to $1,136, Attorney Armstrong violated former SCR 20:1.5(a) (Count Four).[3]

---

[2] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[3] SCR 20:1.5(a), as in effect prior to July 1, 2007, provides:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

¶16 From some time before 2000 and through September 2005, Attorney Armstrong invoiced B.R.T. a flat fee of $500 per month for services identified under a matter name of "POA/Financial."[4] Attorney Armstrong's records indicate that between April 2000 and October 2005 she spent from two to four and one-half hours per month, with a monthly average of 2.69 hours, on this matter. Attorney Armstrong's work on this matter was mostly nonprofessional clerical work, such as receiving, scanning, and filing dividend checks, depositing checks, writing checks, and bookkeeping.

¶17 However, the monthly invoices issued to B.R.T. under the "POA/Financial" matter described the activities as "professional services," such as "Received, Reviewed, Processed Financial Documents for the Month, Conferences with Client and Financial Advisors." The parties stipulate that these descriptions did not fairly or accurately describe the services performed, and included work that was not properly billable to a client.

¶18 Attorney Armstrong sought to justify the flat fee arrangement by estimating two hours of work per month, billed at her normal hourly rate of $250 for professional services. However, the actual legal work consisted of about 15 minutes or less per month. The remainder of the time was spent on non-

---

[4] The reference to "POA" was to powers of attorney executed by B.R.T. in 1998 and 2004, appointing Attorney Armstrong to serve as her attorney-in-fact.

legal clerical activities. Attorney Armstrong charged the monthly $500 flat rate despite language in both the 1998 and 2004 powers of attorney setting her compensation as reimbursement for "all reasonable costs and expenses actually incurred and paid" on behalf of the client.

¶19 The OLR alleged and the parties have stipulated that, by billing B.R.T. a flat fee of $500 per month from May 1, 2000, through October 1, 2005, for legal work that generally consisted of only 15 minutes or less, despite the aforementioned language in the written powers of attorney, Attorney Armstrong violated former SCR 20:1.5(a) (Count Five).

¶20 In addition, between September 1, 2004, and November 1, 2005, Attorney Armstrong billed B.R.T. somewhere between $58,422.32 and $62,815.20 for what was primarily nonprofessional work assisting B.R.T. with matters related to her duplex. This work included "general contractor" type of services (such as consulting with her client about needed repairs, soliciting bids, and helping select contractors such as painters, carpenters, plumbers, and the like); property manager services (such as dunning tenants for unpaid rent, fielding complaints, keeping accounting records for rents, listing the duplex for lease, and seeking new tenants); retaining and supervising workers to clean the duplex; personally sorting and boxing the client's personal property; and running errands (such as picking up parts and supplies, boxes, plastic bags, packing tape, mulch, and the like).

8

¶21 Attorney Armstrong charged her client at her professional rate of $250 per hour for these services and charged her client $150 per hour for services performed by legal assistants.

¶22 The OLR alleged and the parties have stipulated that, by charging her $250 hourly rate as an attorney, and by charging her paraprofessional staff rate of $150 per hour, for the aforementioned nonprofessional work, Attorney Armstrong violated former SCR 20:1.5(a) (Count Six).

¶23 B.R.T.'s husband, John, died in April 2004, and B.R.T. retained Attorney Armstrong to perform legal services relative to John's estate. When John died, he owned a 1993 Mercury Sable automobile, the depreciated value of which was likely less than ten percent of its original base price of $17,500. Attorney Armstrong billed B.R.T. approximately $3,265 for services in cancelling the auto insurance on the vehicle and transferring the vehicle title to John's daughter.

¶24 The OLR alleged and the parties have stipulated that, by charging B.R.T. approximately $3,265 during 2004 and 2005 to cancel auto insurance and transfer a vehicle title, Attorney Armstrong violated former SCR 20:1.5(a) (Count Seven).

¶25 In December 1998, an entity named Trustmark issued a check payable to B.R.T. in the sum of $315. In July 2004, B.R.T. attempted to deposit the check, but her bank rejected and returned the check as stale. B.R.T. gave Attorney Armstrong the stale check and asked her to try to get a replacement. The parties have stipulated that between July 15 and October 26,

9

2004, Attorney Armstrong billed B.R.T. approximately $562.50 to attempt to have a $315 stale check reissued, thereby violating former SCR 20:1.5(a) (Count Eight).

¶26 Finally, following John's death, B.R.T. wanted to close John's AOL account. The parties have stipulated that Attorney Armstrong billed B.R.T. about $385 for the work to cancel this account, thereby violating former SCR 20:1.5(a) (Count Nine).

¶27 Attorney Armstrong has stipulated that she understands the misconduct allegations; that she understands her right to contest this matter; that she understands her right to consult with counsel, and has done so; that she understands the ramifications should the court impose a two-year suspension; and that her entry into the stipulation is made knowingly and voluntarily and represents her admission to the facts and to the alleged misconduct and her agreement with the level of discipline sought by the OLR, as well as her assent to making restitution as recommended by the OLR. The stipulation states that it did not result from plea-bargaining.

¶28 With respect to restitution, the parties stipulated that $16,500 represents a reasonable fee for the "POA/Financial" services. The OLR recommends that we require Attorney Armstrong to make restitution to B.R.T. in the sum of $16,500 for these services.

¶29 With respect to the IRS notice of deficiency, the stipulation provides that $500 represents a reasonable fee for the services performed. The OLR recommends that we require

Attorney Armstrong to make restitution to B.R.T. in the sum of $3,618.95 for this matter.

¶30 With respect to the work performed relating to the duplex, the stipulation provides that $8,307.64 represents a reasonable fee for the services performed. The OLR recommends that we require Attorney Armstrong to make restitution to B.R.T. in the sum of $37,568.36 for these services.

¶31 With respect to the estate of B.R.T's husband, the stipulation provides that $1,000 represents a reasonable fee for the services performed. The OLR recommends that we require Attorney Armstrong to make restitution to B.R.T. in the sum of $3,212.50 in this matter.

¶32 Attorney Armstrong's professional misconduct, including the systematic overcharging of her client, is deplorable. Her misconduct is aggravated by her refusal to acknowledge wrongdoing throughout much of the investigation. Her conduct absolutely warrants a lengthy suspension of her license to practice law.

¶33 After reviewing the matter, we approve the stipulation, in part to facilitate payment of restitution to the victim and in reliance on the cases cited by the OLR in support of a two-year suspension. See, e.g., In re Disciplinary Proceedings Against Gilbert, 227 Wis. 2d 444, 595 N.W.2d 715 (1999). We suspend Attorney Armstrong's license to practice law in this state for a period of two years. We direct Attorney Armstrong to pay restitution to B.R.T. in the amount of $60,899.81. Because this matter is being resolved without the

11

appointment of a referee, and because the OLR has not sought costs, we do not impose the costs of this proceeding on Attorney Armstrong.

¶34 IT IS ORDERED that the license of Jenny R. Armstrong to practice law in Wisconsin is suspended for a period of two years, effective July 24, 2015.

¶35 IT IS FURTHER ORDERED that within 60 days of the date of this order, Jenny R. Armstrong shall pay $60,899.81 in restitution to B.R.T.

¶36 IT IS FURTHER ORDERED that Jenny R. Armstrong shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶37 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).